# UNITED STATES DISTRICT COURT
# DISTRICT OF ALASKA

| | |
|---|---|
| Galen Swan, | |
| Plaintiff, | 3:15-cv-0012 JWS |
| vs. | ORDER AND OPINION |
| United States of America, | [Re: Motions at Dockets 23 and 27] |
| Defendant. | |

## I. MOTIONS PRESENTED

Before the court are two motions *in limine* filed by defendant United States of America. At docket 23 the United States moves *in limine* to preclude plaintiff's expert opinion evidence regarding his damages from the loss of subsistence hunting and fishing opportunities.[1] Plaintiff Galen Swan ("Swan") opposes at docket 33; the United States replies at docket 38.

At docket 27 the United States moves *in limine* to preclude two of Swan's experts from testifying about the relevant standard of care. Swan opposes at docket 35; the United States replies at docket 42.

Oral argument was heard on November 29, 2016.

---

[1] At docket 34 the United States filed a notice of errata related to its filing at docket 23-1.

## II. BACKGROUND

This medical malpractice case arises out of treatment Swan received from the Maniilaq Health Center. Swan's complaint alleges that he visited Maniilaq Health Center in February 2010 because he was experiencing rectal bleeding. Swan alleges that after a stool test came back positive for occult blood,[2] it was necessary to follow-up this test result with a colonoscopy, but his providers "never informed him of his blood test and need for a [colonoscopy] referral," despite the fact that he returned "to the hospital numerous times over the next two and a half years."[3] When a colonoscopy was eventually performed on Swan in 2012, the results were positive for colon cancer. Swan alleges that he has "had to undergo extensive radiation treatment and chemotherapy because of the stage of the cancer."[4]

Swan's one-count action against the United States[5] alleges medical malpractice against Family Practice Physician Erick Torres Semprit, Family Nurse Ruth Lagerberg, and Community Health Practitioner ("CHP") Isabel Booth. He seeks damages for pain and suffering, medical expenses, and lost earning capacity (including the loss of subsistence hunting and fishing opportunities).

## III. STANDARD OF REVIEW

The district courts exercise broad discretion when ruling on motions *in limine*.[6] In order for evidence to be excluded under such motions, it must be "clearly inadmissible

---

[2]Occult blood is defined as "blood in the feces in amounts too small to be seen but detectable by chemical tests." STEDMAN'S MEDICAL DICTIONARY (27th ed. 2000).

[3]Doc. 1 at 2 ¶ 8.

[4]*Id.* at 3 ¶ 9.

[5]The United States admits that it is the proper defendant in this case because the Maniilaq Association "is a tribal organization that compacts with the United States." Doc. 6 at 2 ¶ 4.

[6]*See Jenkins v. Chrysler Motors Corp.*, 316 F.3d 663, 664 (7th Cir. 2002).

on all potential grounds."[7]  "Unless evidence meets this high standard, evidentiary rulings should be deferred until trial so that questions of foundation, relevancy and potential prejudice may be resolved in proper context."[8]

"It is settled law that *in limine* rulings are provisional. Such 'rulings are not binding on the trial judge [who] may always change his mind during the course of a trial.'"[9] "Denial of a motion *in limine* does not necessarily mean that all evidence contemplated by the motion will be admitted to trial. Denial merely means that without the context of trial, the court is unable to determine whether the evidence in question should be excluded."[10]

## IV.  DISCUSSION

### A. Swan's Expert Report on Subsistence Damages is Not Inadmissible

Swan retained economist Hugh Richards ("Richards") to estimate his economic damages, including damages from the loss of subsistence hunting and fishing opportunities. Richards' report assumes that Swan would personally contribute 20% of the following annual subsistence harvest: "25 caribou, 14 bearded seal, 14 nukchuck seal, 1 belukha whale every two and a half years (based on 5 taken each year by village members and about twelve families in the village), 1 walrus every ten years, 35 eider ducks, 1,500 char and dolly varden, 500 whitefish, 8 grayling, 80 chum salmon, and 80 pounds of cod."[11] Richard then valued this lost harvest "at equivalence for substitutes in Fairbanks Fred Meyer adjusted to Nome prices with an additional 10% for

---

[7]*Ind. Ins. Co. v. Gen. Elec. Co.*, 326 F. Supp. 2d 844, 846 (N.D. Ohio 2004).

[8]*Hawthorne Partners v. AT&T Tech., Inc.*, 831 F.Supp. 1398, 1400 (N.D. Ill. 1993).

[9]*United States v. Benedetti*, 433 F.3d 111, 117 (1st Cir. 2005) (quoting *Ohler v. United States*, 529 U.S. 753, 758 n.3 (2000)).

[10]*Ind. Ins. Co.*, 326 F. Supp. 2d at 846.

[11]Doc. 34-1 at 10.

-3-

differential transportation to Kivalina" and, in some instances, a 25% organic-food premium.[12]

The United States seeks to preclude Richards' opinions regarding Swan's subsistence losses, arguing that they violate AS 09.55.549 and are unreliable under Federal Rule of Evidence 702.

**1. Whether Richards' report "objectively verifies" Swan's subsistence damages**

Alaska Statue 09.55.549 defines the economic damages that may be recovered in a medical malpractice action as:

> *objectively verifiable monetary losses* incurred as a result of the provision of, use of, or payment for, or failure to provide, use, or pay for health care services or medical products, and includes past and future medical expenses, loss of past and future earnings, cost of obtaining domestic services, burial expenses, loss of use of property, cost of replacement or repair, loss of employment, and loss of business or employment opportunities".[13]

The district court in *Kasayuli v. United States*,[14] held that subsistence losses are included in this definition. The court found that "residents of rural Alaska . . . engage in year-round hunting and fishing by which they acquire their food, housing, clothes, etc., off the land or water," and these subsistence activities are the functional equivalent of "past and future earnings or employment" for purposes of AS 09.55.549(h)(1).[15]

In its briefing, the United States does not challenge *Kasayuli*'s holding that lost subsistence harvests qualify as economic damages in a medical malpractice action.[16]

---

[12]*Id.* at 2.

[13]AS 09.55.549(h)(1) (emphasis added).

[14]No. 3:12-cv-0241-HRH, 2014 U.S. Dist. LEXIS 189577, *3–4 (D. Alaska Oct. 22, 2014).

[15]*Id.* at *6.

[16]*See* doc 23 at 8 n.3. Counsel for the Untied States challenged *Kasayuli*'s holding at oral argument, asserting that subsistence losses do not qualify as monetary losses under AS 09.55.549 where the harvest is given to others. The court rejects this argument because it was raised for the first time at oral argument and because the court agrees with *Kasayuli* that a

Instead, it argues that Richards' report is not "objective verification" of Swan's subsistence damages because it relies on faulty assumptions regarding Swan's lost subsistence harvest and its replacement cost. The United States does not cite a Federal Rule of Evidence in support of this evidence-preclusion argument, but it is apparently arguing that Richards' estimate of Swan's subsistence damages is inadmissible under Rule 402 because it does not comply with AS 09.55.549(h)(1).

Because the United States does not actually contend that Swan's lost subsistence damages are not "objectively verifiable," this argument is a non-starter. Instead, the United States is challenging the assumptions upon which Richards based his objective verification of Swan's damages.[17] As such, this argument is subsumed by the United States' Rule 702 argument, discussed below.

**2. Rule 702**

Rule 702, as amended in 2000 to incorporate the standards set out by the Supreme Court in *Daubert v. Merrell Dow Pharmaceuticals, Inc.*,[18] and *Kumho Tire Co. v. Carmichael*,[19] allows qualified experts to offer opinion testimony only if:

> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or determine a fact in issue;
> (b) the testimony is based on sufficient facts or data;
> (c) the testimony is the product of reliable principles and methods; and
> (d) the expert has reliably applied the principles and methods to the facts of the case.[20]

---

subsistence harvest is the functional equivalent to employment earnings. Employment earnings are still employment earnings if the earnings are given to others. The same holds true with regard to subsistence harvests.

[17]Doc. 23 at 17 ("In short, Richards made myriad unverified assumptions in order to project and value Swan's lost subsistence production.").

[18]509 U.S. 579 (1993).

[19]119 S.Ct. 1167 (1999).

[20]Fed. R. Evid. 702.

-5-

"This list of requirements makes the task of determining admissibility sound more mechanical and less judgmental than it really is."[21] "[A] district court's inquiry into admissibility is a flexible one,"[22] focused on assuring that the expert testimony "both rests on a reliable foundation and is relevant to the task at hand."[23] The district court's essential task is "to screen the jury from unreliable nonsense opinions," but not "exclude opinions merely because they are impeachable."[24] Because Rule 702 "is aimed at protecting jurors from evidence that is unreliable for reasons they may have difficulty understanding, in a bench trial there is greater discretion regarding procedure and even the stringency of gatekeeping."[25] "Nonetheless, Rule 702 still applies in a bench trial."[26] "It is the proponent of the expert who has the burden of proving admissibility"[27] by the preponderance of the evidence.[28]

The United States challenges the following assumptions that underpin Richards' report:

> (1) that Swan's self-report of his previous harvests is accurate and also accurately estimates his hypothetical future harvests;
>
> (2) that Swan would be able to fully perform subsistence activities until he reached age 74;
>
> (3) that Swan would be able to harvest at half his normal rate from the age of 74 until his estimated life expectancy at age 81;

---

[21]*Alaska Rent-A-Car, Inc. v. Avis Budget Grp., Inc.*, 738 F.3d 960, 969 (9th Cir. 2013).

[22]*City of Pomona v. SQM N. Am. Corp.*, Nos. 12-55147, 12-55193, 2014 WL 1724505, at *3 (9th Cir. May 2, 2014).

[23]*Daubert*, 509 U.S. at 597 (footnotes and citations omitted).

[24]*Alaska Rent-A-Car*, 738 F.3d at 969.

[25] 29 VICTOR JAMES GOLD, FEDERAL PRACTICE & PROCEDURE § 6270 (2d ed.).

[26]*Id.*

[27]*Lust v. Merrell Dow Pharm., Inc.*, 89 F.3d 594, 598 (9th Cir. 1996).

[28]*Daubert*, 509 U.S. at 592 n.10.

(4) that Swan would receive a *pro rata* division of his fishing and hunting group's harvest;

(5) that Swan will replace all of the fish and game he once harvested with equivalents purchased at a store;

(6) that Fairbanks' prices converted to Nome prices and then marked-up by 10% (to reflect the cost of shipping the food from Nome to Kivalina) accurately reflects the value of the replacement food, instead of the prices at a store closer to Kotzebue, where Swan lives;

(7) that the prices the Fairbanks Fred Meyer was charging on the particular day that Richards visited the store accurately reflects the value of the substitute food, instead of an average market price; and

(8) that the prices of some replacement food should be marked-up by 25% to account for the "organic premium" of the lost food.

Although the United States asserts that Richards' methodology is unreliable,[29] Richards uses the same methodology that is used in all damages cases—he attempts to demonstrate a "hypothetical world that never existed, one in which other things remained the same but the breach had not occurred."[30] The United States is not challenging this methodology, it is challenging the assumptions Richards made when employing it. These challenges amount to impeachment; they are not grounds to preclude Richards' report as inadmissible.[31]

"[R]ejection of expert testimony is the exception rather than the rule."[32] "Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence."[33] Although the United States has identified significant issues going to the validity of Richards' assumptions, Richards' opinions are admissible under Rule 702 because those assumptions

---

[29] Doc. 23 at 23.

[30] *Alaska Rent-A-Car*, 738 F.3d at 968.

[31] *Id.* at 969.

[32] Fed R. Evid. 702 comment to the 2000 amendments.

[33] *Daubert*, 509 U.S. at 595.

can be adequately challenged through cross-examination and the presentation of contrary evidence.

**B.    Swan's Standard of Care Experts**

Swan has retained the following two experts to opine on whether the medical providers named in his complaint breached their respective standard of care: (1) Dr. Judith Schmidt, a board certified hematologist, oncologist, and internist,[34] and (2) Dr. Mark Gordon, a general and colorectal surgeon.[35] The United States seeks to preclude both of Swan's experts from testifying about standard of care, arguing that they are unqualified to do so under AS 09.20.185.

In 1997 the Alaska Legislature enacted various tort reform provisions,[36] including § 185 of Title 9, Chapter 20, of the Alaska Statues.[37] This section states that, "[i]n an action based on professional negligence, a person may not testify as an expert witness on the issue of the appropriate standard of care unless the witness" is : (1) a licensed professional; (2) "trained and experienced in the same discipline or school of practice as the defendant or in an area directly related to a matter at issue"; and (3) "certified by a board recognized by the state as having acknowledged expertise and training directly related to the particular field or matter at issue."[38]  If there is no state-recognized board for the particular field or matter at issue, these requirements do not apply.[39]

---

[34] Doc. 27-7 at 1.

[35] Doc. 27-9 at 2.

[36] *Evans ex rel. Kutch v. State*, 56 P.3d 1046, 1048 (Alaska 2002).

[37] Ch. 26, § 15, SLA 1997.

[38] AS 09.20.185(a).

[39] AS 09.20.185(b).

Courts applying this statute have focused on whether the expert's experience, training, and board certification is directly related to the matter at hand. In *Ayuluk v. Red Oaks Assisted Living, Inc.*, the plaintiff wanted a registered nurse to testify as to the standard of care applicable to certified nurse's aides ("CNAs").[40] Although the witness was not a board-certified CNA, she was a nurse for almost forty years, and she served on the board that regulates CNAs. The Alaska Supreme Court held that the witness was qualified under § 185 because her experience, training, and board certification was "in an area directly related to the matter at issue."[41] Conversely, in *Liebsack v. United States*, the alleged negligence "involved the psychiatric treatment of a schizoaffective patient, the interpretation of potential symptoms of lithium toxicity, and the duties associated with lithium therapy."[42] The Ninth Circuit held that, given the matters at issue, only a board-certified psychiatric expert could testify as to the standard of care. As such, defendant's family medicine experts were not qualified witnesses.[43]

Here, the United States argues that an expert is disqualified under § 185(a), unless he or she is either certified by the same board as the defendant or has "similar training and experience."[44] This reading is inconsistent with the text of the statute. The United States focuses only on the first clauses of § 185(a)(2) and (3), which state that an expert is not prohibited from testifying if his or her training, experience, and board certification is in the same field as the defendant. The United States misses the significance of the second clause,

---

[40]201 P.3d 1183, 1192 (Alaska 2009).

[41]*Id.*

[42]731 F.3d 850, 857 (9th Cir. 2013).

[43]*Id.* at 858.

[44]Doc. 27 at 7. *See also* doc. 42 at 3.

which states that an expert is also not prohibited from testifying if his or her training, expertise, and board certification directly relate to "a matter at issue."

In *Hymes v. DeRamus*, the Alaska Supreme Court held that a board-certified psychiatrist, who had different experience and was certified by a different board than the defendants (a physician and a physician's assistant), would meet the requirements of § 185(a) because the psychiatrist's training, board certification, and experience would be "in an area directly related to a matter at issue: the "psychological effects of failing to adequately treat [the plaintiff's] physical conditions."[45] Similarly, in *Pallas v. United States*, the district court held that an internist could testify against a family practitioner because the treatment of pneumonia was a matter at issue.[46]

The diagnosis of colon cancer from the discovery of occult blood is a matter at issue here. So long as Swan's experts' training, expertise, and board certifications directly relate to this matter, § 185(a) does not disqualify them from testifying as to the applicable standard of care. Internal medicine is a medical specialty that deals with the diagnosis and non-surgical treatment of the internal organs.[47] As a board-certified internist, Dr. Schmidt's training, expertise, and board certification directly relate to the diagnosis of colon cancer. She is not disqualified from testifying. The same cannot be said of Dr. Gordon, however. Even though Dr. Gordon may have extensive experience supervising employees in fields similar to the professions at issue in this case, his board certification in surgery does not directly relate to a matter at issue in this case. Dr. Gordon is disqualified from testifying under § 185(a)(3).

---

[45] 222 P.3d 874, 886–87 (Alaska 2010).

[46] No. 3:12-cv-0122-HRH, 2016 U.S. Dist. LEXIS 60633, at *12 n.18 (D. Alaska May 4, 2016).

[47] *Internal Medicine*, OXFORD ENGLISH DICTIONARY (3rd ed. 2015).

-10-

## V. CONCLUSION

For the reasons set forth above, the United States' motion at docket 23 is DENIED, and its motion at docket 27 is GRANTED IN PART AND DENIED IN PART AS FOLLOWS: Dr. Gordon is prohibited from testifying as to standard of care.

DATED this 1st day of December 2016.

/s/ JOHN W. SEDWICK
SENIOR JUDGE, UNITED STATES DISTRICT COURT